## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

FILED

OCT 1 3 2009

MICHAEL E. KUNZ, Clerk

By_____Dep. Clerk

| | |
|---|---|
| **VALERIE BAINBRIDGE**<br>1970 Harmonyville Road<br>Pottstown, PA 19465 | :<br>:<br>: |
| | :    CIVIL ACTION NO.: |
| **Plaintiff,** | : |
| | : |
| **v.** | : |
| | : |
| **ACME MARKETS, INC.** | :    **JURY TRIAL DEMANDED** |
| 75 Valley Stream Parkway<br>Malvern, PA 19355 | :<br>: |
| | : |
| **Defendant.** | : |
| | : |

## COMPLAINT

Plaintiff, Valerie Bainbridge, by and through counsel, for her Complaint, avers as follows:

### Preliminary Statement

1.      Defendant, Acme Markets, Inc. ("Acme") discriminated against plaintiff Valerie Bainbridge, a loyal employee at Acme for 37 years because of her age, 62.  Acme demoted and transferred Mrs. Bainbridge from her position as Office Coordinator of the West Chester store for minor policy violations while failing to discipline younger employees who committed the same or more serious infractions.  Acme replaced Mrs. Bainbridge with a significantly younger worker because it impermissibly harbored age bias against older workers.  Mrs. Bainbridge performed her job satisfactorily despite Acme's failure to provide her with adequate training for the position.

1

2.      Mrs. Bainbridge seeks equitable and monetary relief, including but not limited to, back pay, front pay, benefits, pension benefits, attorney's fees, costs of this suit, compensatory damages, liquidated damages, punitive damages, interest and all other legal and equitable relief to which she is entitled for the denial of equal employment opportunity and unlawful practices by Acme, including but not limited to the following:

a)      Discrimination against Mrs. Bainbridge with respect to the terms, conditions and privileges of employment, because she is a person over the age of forty (40) years of age; and

b)      Discrimination against Mrs. Bainbridge with respect to the terms, conditions and privileges of employee benefits and retirement plan;

c)      Limiting and otherwise creating conditions of employment opportunity which impaired Mrs. Bainbridge's ability to continue and obtain job opportunities and which caused Mrs. Bainbridge damage to her reputation.

3.      Mrs. Bainbridge's claims arise under the Age Discrimination in Employment Act, 29 U.S.C. 621 et seq., as amended ( "ADEA"), the Pennsylvania Human Relations Act, 43 P.S. 951 et seq., as amended ("PHRA"), the Fair Labor Standards Act of 1938, ("FLSA") 29 U.S.C § 201 et seq., as amended.

**Jurisdiction and Venue**

4.      This Court has jurisdiction over the subject matter of the Complaint pursuant to 28 U.S.C. § 1331.  Mrs. Bainbridge's cause of action arises under  29 U.S.C. § 621 et seq., as amended, the Age Discrimination in Employment Act (the "ADEA").  The Court has jurisdiction over Mrs. Bainbridge's claims under the Pennsylvania Human Relations Act, 43 P.S. 951 et seq., as amended ("PHRA"), pursuant to its supplemental jurisdiction as codified at 28 U.S.C. § 1367.

2

5.     Mrs. Bainbridge has exhausted all administrative remedies, having filed a timely charge with the United States Equal Employment Opportunity Commission (the "EEOC"), which was dual-filed with the Pennsylvania Human Relations Commission (the "PHRC"). On July 14, 2009, the EEOC issued a Notice of Right to Sue. A true and correct copy of the Right to Sue letter is attached hereto as Exhibit "A." Mrs. Bainbridge has filed suit within 90 days of her receipt of the Notice of Right to Sue. More than one year has expired since Mrs. Bainbridge filed her charge and dual-filed it with the Pennsylvania Human Relations Commission

6.     Venue is appropriate in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(a)(2) because all of the events or omissions giving rise to the claim occurred in this District.

**Parties**.

7.     Plaintiff Valerie Bainbridge is an adult individual and a citizen of Pennsylvania residing at 1970 Harmonyville Road, Pottstown, PA 19465.

8.     Defendant Acme Markets, Inc. is a Delaware corporation and is a retail grocery store chain headquartered in Malvern, Pennsylvania. Acme operates approximately 129 stores throughout eastern Pennsylvania, New Jersey, Delaware and Maryland. Acme employs approximately 17,000 employees throughout its operations.

9.     At all times relevant to this lawsuit, Acme has conducted business and affected commerce in the Commonwealth of Pennsylvania and has employed at least fifteen (15) persons over the last four (4) calendar quarters prior to the alleged discriminatory actions in this Complaint. At all times relevant to this lawsuit, Acme was an employer, as defined under Section 11(b) of the ADEA, Section 954(b) of the PHRA.

3

10.     At all times relevant to this lawsuit, Acme continuously employed and still employs at least twenty (20) employees engaged in commerce within the meaning of Section 11(g) of the ADEA, and at least four employees under Section 954(b) of the PHRA.

11.     At all times relevant this lawsuit, Mrs. Bainbridge was an employee of Acme within the intent and meaning of § 11(b) of the ADEA, Section 954(c) of the PHRA.

12.     At all times relevant to this lawsuit, Acme's authorized directors, officers, managers, employees, servants and agents engaged in the acts and events which form the basis of Mrs. Bainbridge's claims and acted within the scope of their authorization and duties.

**Factual Background**

13.     Mrs. Bainbridge was born on June 10, 1946.  She is 63 years old.

14.     Mrs. Bainbridge first worked for Acme in 1965, at its Phoenixville store as a head cashier.  She left after less than two years for another job and to start her family.

15.     Mrs. Bainbridge returned to Acme in 1971 as a cashier at the Spring City store.

16.     In 1978, Mrs. Bainbridge transferred to the West Goshen store as a cashier. Later, she was the employee in charge of price changes, which, in pre-bar code days was a very labor-intensive process. While at West Goshen, she transitioned into the position of the night front desk clerk.  This position required, among other things, for Mrs. Bainbridge to review and balance all of the cash drawers, remove large cash amounts from cash drawers and place them into the store safe, handle customer requests for refunds and rain checks, deliver change to the cashiers, monitor cashier staffing and call staff to the check out lanes during busy times, balance the store safe and prepare the next day's bank deposit.

17.     Mrs. Bainbridge worked continuously for Acme from 1971 until July, 2008. Mrs. Bainbridge was at all times a diligent, loyal and productive employee.

4

18.     Acme evaluated its employees annually.  Mrs. Bainbridge never received lower than "Meets Expectations" in any category and usually received "Above Expectations" or "Outstanding."

19.     In a typical evaluation in 1999, Mrs. Bainbridge received "Outstanding" in two categories, "Above Expectations" in four categories and "Meets Expectations" in two categories. In the comments section, the evaluator wrote "Very loyal and Trustworthy. An asset to the Store Team. Does whatever is asked of her."

20.     Mrs. Bainbridge was uncommonly loyal to Acme and had a heightened sense of duty to the store and her position.  For example, on one occasion the West Goshen store caught fire.  Acme evacuated all of its employees but Mrs. Bainbridge stayed behind inside the store to secure the large cash receipts in the office and deposit them into the fireproof safe.  Mrs. Bainbridge stayed inside the store despite the large amounts of thick smoke.

21.     At the time of her termination from Acme, Mrs. Bainbridge was earning a salary of approximately $45,926 per year together with pension, medical and dental benefits, all of which she would have continued to receive had she not been forced to leave Acme because of age discrimination.

22.     In 2004, Acme opened a new store in West Chester, Pennsylvania.

23.     Mrs. Bainbridge applied for, or "bid" for a front desk position at the new store. Acme selected Mrs. Bainbridge for the position, promoted her to full-time status and transferred her to the new West Chester store.

24.     Full time positions were uncommon at Acme and usually reserved for Department Heads.  Full-time employees received enhanced benefit reimbursements.  Most Acme employees were classified as part-time, even if they worked 40 or more hours per week.

5

25.     At the new store, Mrs. Bainbridge held several different positions at the service desk in the front of the store and was responsible for the photo lab, lottery ticket sales, cigarette sales, refunds, gift certificate sales, rain checks, customer complaints and Office Coordinator back-up.

26.     Mrs. Bainbridge was the Back-up Office Coordinator only for one year, from 2005 until 2006, when she became the Office Coordinator.  In her previous positions as front desk clerk, Mrs. Bainbridge performed some of the functions of the Office Coordinator, such as balancing the store, preparing deposits and balancing individual cash drawers.

27.     In late 2006, the Office Coordinator position in the West Chester store became open.  Acme posted the Office Coordinator position in November, 2006.

28.     While Acme searched for a replacement, Mrs. Bainbridge performed the job functions of Office Coordinator.  The job of Office Coordinator required substantial use of Acme's computerized payroll and store management system.

29.     Mrs. Bainbridge did not initially bid on the Office Coordinator.  On the last day of the posting, Ron Williams, District Manager, told Mrs. Bainbridge that he wanted her to bid on the job and that if she did bid on it, she would get it.

30.     Based on Williams' representations and in accordance with her already heightened sense of duty, Mrs. Bainbridge bid on the Office Coordinator position. After completing the interview process, Acme awarded the position to Mrs. Bainbridge because she was the most qualified person.  Mrs. Bainbridge became the Office Coordinator on December 17, 2006.  At that time, Ron Brensinger was the manager of the West Chester Store.

31.     When Mrs. Bainbridge began as the Office Coordinator for the West Chester store, she requested appropriate training.  Acme told Mrs. Bainbridge that Acme could not afford

6

to train her but she could spend two and one-half days at the West Goshen store to train with the Office Coordinator at that store, Ted Towers.

32.     Towers did not give Mrs. Bainbridge the appropriate training.  He simply allowed her to observe his every day tasks which Mrs. Bainbridge already knew how to do.  Mrs. Bainbridge never received training on more complicated tasks that required in-depth knowledge of Acme's payroll and store management system.  When Mrs. Bainbridge brought this to Acme's attention, Ron Williams, District Manager, instructed Mrs. Bainbridge to call other Office Coordinators at other stores if she had a problem. Mrs. Bainbridge kept a notebook in which she wrote down instructions and information relating to her position so that she could refer to her notes when the same issues arose in the future.

33.     Office Coordinators at other Acme stores have a front desk person identified as a back-up to perform the duties of Office Coordinator when the Office Coordinator is not at work. Acme failed to assign a back-up Office Coordinator to the West Chester store for the first five months Mrs. Bainbridge held the position.  As a consequence, Mrs. Bainbridge worked seven days per week with no day off.

34.     For the first several months that Mrs. Bainbridge was the Office Coordinator at the West Chester store, her managers reported no problems with her performance.

35.     In April or May 2007, Martha Thornley, age 50 became the store manager.  Kim Walsh, age 39 was the assistant manager.

36.     In or about June, 2007, Mrs. Bainbridge was named the "Employee of the Month" at the West Chester store.

37.     Almost immediately after Mrs. Bainbridge was named "Employee of the Month," both Martha Thornley and Kim Walsh began criticizing her performance.  In all of her years of service at Acme, no supervisor before these two had criticized Mrs. Bainbridge's performance.

38.     On August 2, 2007, Mrs. Bainbridge was given a verbal warning for allegedly failing to prepare time card modification slips and a reminder that overtime must be approved by management.

39.     As the Office Coordinator, Mrs. Bainbridge was in charge of ensuring that all employee hours were properly submitted for payroll.  If an employee failed to punch the clock at the end of a shift, the employee would not be paid.  Numerous employees at the West Chester store failed to punch out at the end of their shift on a daily basis.  Mrs. Bainbridge was required to ask each employee what time he or she punched out and manually enter the time into the computer system.  Each time she manually entered time, Mrs. Bainbridge had to fill out a time card modification slip, sign it and have it signed by the employee.

40.     Before the August 2, 2007 written warning, Martha Thornley had never discussed time card modification slips or overtime pay with Mrs. Bainbridge.  Martha Thornley never instructed Mrs. Bainbridge to give her the time card modification slips for approval.  Mrs. Bainbridge's previous managers had not required Mrs. Bainbridge to deliver the slips to them for approval.

41.     At the time of the August 2, 2007 verbal warning, Mrs. Bainbridge had obtained a time card modification slip from all employees whose time she manually modified.  She kept these slips in a three-ring binder.  After the August 2, 2007 warning, Mrs. Bainbridge brought all of the accumulated slips to Martha Thornley for approval on a weekly basis.

8

42.     The requirement of management approval for time card modification slips either was a fabricated requirement or selectively enforced against Mrs. Bainbridge.

43.     Martha Thornley and Kim Walsh required Mrs. Bainbridge to fill out a time card modification slip for every erroneous punch of any employee even though other managers did not require such slips. In addition, Thornley and Walsh never reprimanded or disciplined other, younger employees who habitually violated the time clock policy. Instead, Thornley and Walsh blamed Mrs. Bainbridge if she failed to correct the time card punches of the habitual offenders.

44.     On August 21, 2007, Martha Thornley issued another verbal warning to Mrs. Bainbridge regarding proper payment of substitute department heads and holiday and vacation time.

45.     Before the August 21, 2007 warning, Kim Walsh instructed Mrs. Bainbridge to prepare payroll from the work hours and vacation time schedule that Kim Walsh gave her. Whether by design or by incompetence, Kim Walsh's schedule was incorrect many times, unbeknownst to Mrs. Bainbridge.

46.     The kinds of errors that Walsh made in the schedule included failing to note employees who were filling in for department managers, failing to properly note vacation days and personal holidays and improperly including employees in the schedule who were not scheduled to work.

47.     These payroll errors were corrected with no monetary loss to Acme or employees.

48.     For the first time, at the counseling session on August 21, 2007, Thornley and Walsh instructed Mrs. Bainbridge to check the time-off request form function in Acme's computer system in addition to Walsh's prepared schedule. Because Acme had never properly trained Mrs. Bainbridge, she was unaware of this function.

9

49.     Even after Thornley and Walsh alerted Mrs. Bainbridge to consult the time-off request form when preparing payroll, inconsistencies between the prepared schedule and time-off request forms persisted. When Walsh's errors continued, Mrs. Bainbridge, on her own initiative, printed out the remaining personal holidays and vacation days for all employees to reduce any errors in the payroll.

50.     On September 6, 2007, Acme called Mrs. Bainbridge to a meeting in the West Chester Store. The union representative, Carol Waite attended the meeting. Marianne Donoghue, Area Front End Operations Manager was also present at the meeting.

51.     Mrs. Bainbridge had no advance notice of the meeting.

52.     At the meeting, Thornley accused Mrs. Bainbridge of paying Michelle Doonan, the bakery manager, incorrectly in June of 2007. Thornley pressured Mrs. Bainbridge to voluntarily step down from the Office Coordinator position.

53.     Because Mrs. Bainbridge was surprised by the request and because the event in question occurred so far in advance of the meeting, Mrs. Bainbridge orally told Martha Thornley she would resign.

54.     The next day, Mrs. Bainbridge reviewed the payroll records for Michele Doonan. She discovered that she had paid the employee correctly. She showed the records to Walsh who told Mrs. Bainbridge that Thornley wanted "to do it this way, otherwise we would keep writing you up until you were terminated."

55.     Mrs. Bainbridge told Walsh that she did not want to resign from the Office Coordinator position. At or about that time, Mrs. Bainbridge wrote several emails to other managers at Acme in the Malvern main office, including Marianne Donaghue, Area Front End Operations Manager and Marianne Nice, a manager who supervises Marianne Donaghue. In the

10

emails, Mrs. Bainbridge communicated her desire to remain in the job, that she had done nothing wrong and that she felt she was being discriminated against because of her age.  Acme did not respond to Mrs. Bainbridge's emails or her concern about age discrimination.

56.     After the September 6, 2007 meeting, Martha Thornley met with Mrs. Bainbridge in Thornley's office.  Thornley told Mrs. Bainbridge that working with computers was harder for older workers.  Thornley told Mrs. Bainbridge that since younger workers grew up with computers, it was easier for them to work with computers.

57.     Mrs. Bainbridge was dismayed at Thornley's comments because she felt that Thornley wanted her out of the Office Coordinator position because of her age.

58.     After the September 6, 2007 meeting, Thornley reduced Mrs. Bainbridge's responsibilities by assigning all of Mrs. Bainbridge's payroll duties to Kaitlin Roegner, age 22.

59.     Because Mrs. Bainbridge refused to resign from the Office Coordinator position, Thornley continued to issue disciplinary warnings against her.  Thornley issued three disciplinary warnings on the same day on November 4, 2007.

60.     Each of the warnings on November 4, 2007 involved payroll issues.  On one, Mrs. Bainbridge wrote that she was not responsible for payroll after September 6 because Thornley had assigned payroll responsibility to Kaitlin Roegner, age 22.  Another warning involved overtime payments that had not been approved in advance. All of these payments occurred in October, 2007, after Kaitlin Roegner assumed responsibility for payroll.  The last warning involved an alleged payment of vacation time in the wrong week but gives no information regarding the employee or the date.

61.     Upon information and belief, the disciplinary warnings issued on November 4, 2007 falsely accused Mrs. Bainbridge of errors that she had not made, or related to items not assigned to Mrs. Bainbridge or to items actually performed by Kaitlin Roegner.

62.     To the extent that any of the payroll issues involved errors in vacation pay, those errors were caused by Kim Walsh's errors in the employee schedules.

63.     Younger workers at the West Chester store committed much more severe performance errors but Acme did not counsel those employees, or issue disciplinary warnings.

64.     The union representative at the meeting on November 4, 2007, Kim Carroll, complained that Thornley's disciplinary warnings to Mrs. Bainbridge were unfair and that the incidents were not the type that usually engendered disciplinary warnings.

65.     Acme retained younger workers performing the same job responsibilities as Mrs. Bainbridge despite much worse performance problems. Acme held younger workers to a different, more lenient standard of performance than Mrs. Bainbridge.

66.     Mrs. Bainbridge maintains that her performance as an Office Coordinator was satisfactory, that the disciplinary warnings were a pretext for age discrimination and that Acme was trying to force her out of her position because of her age.

67.     On September 24, 2007, the West Chester store was audited by SUPERVALU, Acme's parent corporation. A portion of the audit specifically focuses on the work of the Office Coordinator. Mrs. Bainbridge had been the Office Coordinator for most of the year preceding the audit.

68.     Mrs. Bainbridge passed the audit. The auditor complimented Mrs. Bainbridge on her organization of the front office and recognized that all necessary items were readily available for him to inspect.

12

69.     Acme retained other younger Office Coordinators who failed their SUPERVALU audits and who did not maintain records in accordance with SUPERVALU's requirements.

70.     After Mrs. Bainbridge refused to resign from the Office Coordinator position, Acme searched for an additional reason to remove Mrs. Bainbridge from the Office Coordinator position and from Acme.

71.     Kim Walsh, who had left the West Chester store, substituted for a vacationing store manager in November, 2007. At that time, she reviewed video surveillance tapes in an attempt to find some reason to force Mrs. Bainbridge out of her position.

72.     As a result of Kim Walsh's review of surveillance video tapes, Acme identified two instances in June of 2007 in which Mrs. Bainbridge left a few minutes before the end of her scheduled shift without punching out.

73.     Kim Walsh reported this to Acme's Loss Prevention Department who launched an investigation.

74.     On November 23, 2007, Acme confronted Mrs. Bainbridge with the evidence from the surveillance tapes. David Christmas and Nicholas Miceli, Acme employees who investigated store losses, and Mrs. Bainbridge attended the meeting.  Acme accused Mrs. Bainbridge of leaving early and then recording that she punched out at the end of her shift when she returned to work the next day.

75.     Acme's investigation revealed that Mrs. Bainbridge left the store at 2:19 on one day and 2:17, the second day.  Associates were allowed to punch out 7 minutes before the end of their shift without penalty.  On those two occasions, Mrs. Bainbridge could have punched out at 2:23.

13

76.     Although Mrs. Bainbridge had punched out for her break, she believes that she did not actually take a break because her break was interrupted by work obligations. In fact, the video shows that Mrs. Bainbridge had paperwork in her hands when she left the front desk for her break.

77.     During the meeting on November 23, Mrs. Bainbridge admitted, on a few occasions, to taking unused coupons left dangling from the coupon printer machine at the self-check out. The coupons were intended for customers but sometimes customers left the coupons behind after scanning their items.

78.     Other younger employees at Acme took unused coupons from the self-check out and were not disciplined.

79.     As a result of this meeting, in which Acme determined that Mrs. Bainbridge left 4 minutes early one day and 6 minutes early another day, Martha Thornley suspended Mrs. Bainbridge for two weeks. Contrary to law, Thornley suspended Mrs. Bainbridge without a union representative present.

80.     According to Acme, Mrs. Bainbridge had violated the Time Clock Policy.

81.     The United Food and Commercial Workers Union Local 27 grieved the suspension. A meeting occurred on December 6, 2007 regarding the grievance. As a result of that meeting, Acme agreed not to terminate Mrs. Bainbridge but demoted her from the Office Coordinator position and transferred her to another Acme store in Westtown, PA.

82.     Acme presented Mrs. Bainbridge with a release that day which she had to sign right then and there or Acme would have fired her.

14

83.     Acme did not afford Mrs. Bainbridge the procedural protections of the Older Workers Benefit Protection Act ("OWBPA")  Thus, the release did not constitute a valid waiver of any claims under the ADEA.

84.     Other younger employees at the West Chester store left the store without punching out on a daily basis. This conduct violates Acme's Time Clock Policy. Acme did not review surveillance tapes to determine the actual time that these employees left and none of these employees were disciplined or terminated.

85.     As part of her job as Office Coordinator, Mrs. Bainbridge was required to ask employees who left without punching what time they left and modify the computer record according to what she was told.  Invariably, all of the employees told Mrs. Bainbridge that they left at the end of their shift.

86.     Although numerous employees at the West Chester store violated Acme's Time Clock Policy, Acme did not enforce the policy against those employees.

87.     Kaitlin Roegner, age 22,  added time to her record in the computer to make 40 hours in one week, even though she only worked 39.5 hours.  Roegner did not prepare a time card modification slip. Roegner's actions were recorded on surveillance tape.

88.     Mrs. Bainbridge reported Roegner's actions to her managers but Acme did not discipline Roegner.

89.     On another occasion, Roegner failed to punch in and out for her break, although she took her break, and left early when she should have worked for an additional 30 minutes. Acme did not discipline Roegner.

90.     During her entire tenure as Office Coordinator, Acme entrusted Mrs. Bainbridge with the keys to the store.  Mrs. Bainbridge would arrive early, most days at 5:30 a.m. and some

15

days at 5:00 a.m., so that she could open the door for arriving employees.  Once inside the store, she would continue to open the doors for employees, even though she did not punch in until 7 minutes before the start of her shift every day. Almost without fail, Mrs. Bainbridge punched in 7 minutes before the start of her shift every day.

91.     Under Acme's work rules, an employee would not be paid overtime for punching in up to 7 minutes before their shift.

92.     Because Acme entrusted Mrs. Bainbridge with the keys to the store and because Mrs. Bainbridge arrived early before the start of her shift to open the door for arriving employees, she was actually working for Acme during that time.  Acme never compensated her for that time.

93.     Over the course of the year Mrs. Bainbridge worked as Office Coordinator, Mrs. Bainbridge gave Acme 196 hours of uncompensated time by coming to work in advance of her shift to open the door for arriving Acme employees.

94.     Over the course of one year, by punching in 7 minutes before the start of her shift, Mrs. Bainbridge gave Acme 36.4 hours of uncompensated time under Acme's work rules.  Over the course of a 37-year career, Mrs. Bainbridge gave Acme 1,346.8 hours of uncompensated time by punching in 7 minutes before the start of her shift.

95.     Yet, Acme suspended, demoted and transferred an uncommonly loyal, reliable and trustworthy employee because she left 4 minutes early one day and 6 minutes early another day without punching.

96.     Acme's suspension, demotion and transfer of Mrs. Bainbridge was the result of Acme's selective enforcement of the time clock policy against Mrs. Bainbridge.  Other younger workers who routinely violated the time clock policy were retained by Acme.

97.     Acme's selective enforcement of the time clock policy was a pretext for age discrimination and an attempt by Acme to force Mrs. Bainbridge out of her position because of her age.

98.     Acme replaced Mrs. Bainbridge with a much younger employee, Michele Moore, age 28.

99.     On December 9, 2007, Mrs. Bainbridge began work at the Westtown store as a check out cashier. Mrs. Bainbridge had not worked on the check out lane for more than 20 years.

100.    Acme circulated rumors at the Westtown store that Mrs. Bainbridge was a thief and not to be trusted. As a result, the managers and other employees treated Mrs. Bainbridge as if she could not be trusted to return from break on time or to start or end her shift on time. Acme employees continually to humiliated and embarrassed her by scrutinizing her every move. Acme did not treat other, younger employees in the same way.

101.    In addition, Acme criticized Mrs. Bainbridge's performance. Mrs. Bainbridge's cash drawer balanced perfectly every day. However, Acme criticized Mrs. Bainbridge for opening her drawer too many times or for having too many coupons in the drawer. Other younger employees were not similarly criticized.

102.    After 37 years at Acme, during which Acme trusted Mrs. Bainbridge to handle large amounts of cash on a daily basis, and Mrs. Bainbridge deserved such trust, Mrs. Bainbridge was humiliated and embarrassed because Acme managers at the Westtown store treated her as a thief.

103.    Thornley discussed Mrs. Bainbridge's demotion and transfer with other Acme employees who then disparaged Mrs. Bainbridge to still other Acme employees. These actions

further humiliated and embarrassed Mrs. Bainbridge and damaged her reputation among her peers and among Acme's managers.

104.    Acme's humiliating treatment of Mrs. Bainbridge at the Westtown store after 37 years of loyal service became too unbearable.  Mrs. Bainbridge suffered from depression, excessive weeping and experienced gastric upset.

105.    Approximately one month after her 62 birthday, in July, 2008 Mrs. Bainbridge took early retirement because she could not bear to go to work in the environment Acme created for her at the Westtown store.

106.    Acme constructively discharged Mrs. Bainbridge from her position at Acme.

107.    But for Mrs. Bainbridge's age, Acme would never have suspended, demoted or transferred Mrs. Bainbridge.

108.    But for Acme's discriminatory conduct in suspending, demoting and transferring Mrs. Bainbridge, she would not have retired early in July 2008 but would have remained at Acme until at least age 67.

109.    In its discrimination against Mrs. Bainbridge, Acme acted intentionally, recklessly and in knowing disregard for the rights of Mrs. Bainbridge under the ADEA.

**COUNT I**
**Age Discrimination in Employment Act**
**29 U.S.C. § 621, et seq.,**

110.    The allegations contained in paragraphs 1 through 109 are incorporated herein as if fully set forth at length.

111.    Acme Markets, Inc., by and through its agents, servants, employees, officers and directors, wrongfully violated Section 623 (a) and (d) et seq. of the Age Discrimination in

18

Employment ("ADEA") and retaliated against Mrs. Bainbridge for making a complaint of age discrimination and/or filing a charge with the Equal Employment Opportunity Commission ("EEOC") in violation of the ADEA, resulting in the loss of back pay, front pay, benefits and employment opportunity to Mrs. Bainbridge's great detriment and loss.

**COUNT II**
**Pennsylvania Human Relations Act**
**43 P.S. § 951 *et seq.***

112.    Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 107 as though fully set forth at length.

113.    Defendant Acme Markets, Inc., by and through its agents, servants, employees, officers and directors, wrongfully violated Section 955 (a) et seq. of the Pennsylvania Human Relations Act, ("PHRA") and retaliated against Mrs. Bainbridge for complaining about age discrimination and for filing a charge alleging age discrimination in the workplace in violation of the PHRA, resulting in the loss of back pay, front pay, benefits and employment opportunity to Mrs. Bainbridge's great detriment and loss.

114.    Defendant, Acme Markets, Inc., by and through their agents, servants, employees, officers and directors knew or should have known that their conduct would and did cause Mrs. Bainbridge harm to her reputation, humiliation, embarrassment, emotional distress, stress, harm, pain and suffering, resulting in the damages described herein.  Mrs. Bainbridge's reputation was damaged due to rumors that she was a thief which was not true.

**COUNT III VIOLATION OF**
**FAIR LABOR STANDARDS ACT**

115.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 to 114 of this Complaint as if fully restated herein.

19

116. Plaintiff is an employee within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(e)(1).

117. Acme Markets, Inc. is an employer within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

118. At all times material hereto, Mrs. Bainbridge was employed by Acme Markets, Inc.

119. Section 207(a)(1) of the Fair Labor Standards Act provides that no employer shall employ an employee for more than forty (40) hours in a workweek "unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one half times the regular rate at which he is employed."

120. Between November 2006 and November 2007, Mrs. Bainbridge worked approximately 196 hours of overtime (in excess of forty hours in a workweek) while in the employ of Acme Markets, Inc. for which she received no compensation from Acme.

121. Acme is therefore liable to Mrs. Bainbridge for one and one-half times her regular rate of pay for all hours that she worked in excess of forty (40) hours per week.

122. In failing and refusing to pay Mrs. Bainbridge all overtime compensation which she is due, Acme has willfully violated the Fair Labor Standards Act.

## DAMAGES – ALL COUNTS

123. Mrs. Bainbridge has been damaged by the foregoing actions of the Defendant, Acme Markets Inc., in an amount which cannot presently be determined, but which exceeds One Hundred Fifty Thousand Dollars ($150,000.00).

124. Mrs. Bainbridge claims damages or make whole relief, which includes lost compensation, fringe benefits, pension benefits and bonuses, together with loss of back and front

pay, and all other relief available by statute (state and federal) and common law, including but not limited to, damages for pain and suffering.

**WHEREFORE,** Mrs. Bainbridge prays that this Court enter judgment for her and against Defendant Acme Markets, Inc. as follows:

a.   Loss of compensation, benefits, pension, promotional opportunity from the date of her termination (back and front pay and benefits); in excess of $150,000.00;

b.   Damages for pain and suffering, humiliation and embarrassment;

c.   Other legal and equitable relief, including reinstatement;

d.   Mrs. Bainbridge's reasonable attorney's fees, together with the costs of litigation and pre and post judgment interest;

e.   Damages for negative tax consequences;

f.   Liquidated damages as provided by law;

g.   Such other relief, as this Court deems just and appropriate.

## JURY TRIAL DEMANDED

Plaintiff, Valerie Bainbridge, demands trial by jury on all questions of fact raised in this action.

Respectfully submitted,

Marian K. Schneider
Attorney-at-Law
I.D. No. 50337
Validation of Signature Code: MKS4807
295 E. Swedesford Road, #348
Wayne, PA 19087
Tel. 610-644-1925
**Attorney for Plaintiff**

21

EXHIBIT "A"

EEOC Form 161 (rev 2/17/08)                          ᴜᴀʟ Eᴍᴘʟᴏʏᴍᴇɴᴛ Oᴘᴘᴏʀᴛᴜɴɪᴛʏ...         ssɪᴏɴ

## Dɪsᴍɪssᴀʟ ᴀɴᴅ Nᴏᴛɪᴄᴇ ᴏғ Rɪɢʜᴛs

| To: Valerie Bainbridge | From: Equal Employment Opportunity Commission |
|---|---|
| 1970 Harmonyyville Road | Philadelphia District Office |
| Pottstown, PA 19465 | 801 Market Street, Suite 1300 |
| | Philadelphia, PA  19107-3127 |

[  ]  *On behalf of person(s) aggrieved whose identity is*
      *CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 846-2008-10551 | Legal Unit | (215) 440-2828 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[  ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[  ]   Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[  ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

[  ]   Your charge was not timely filed with EEOC.  In other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ X ]   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[  ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[  ]   Other *(briefly state)* _____

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit must be filed **WITHIN 90 DAYS** from your receipt of this Notice; otherwise, your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Marie M. Tomasso, District Director                    July 14, 2009
                                                        *(Date Mailed)*

Enclosure(s)
        Information Sheet
cc:     Acme Markets
        Marian K. Schneider, Esquire  (For Charging Party)
        Stacy slate, Associate Relations Manager  (For Respondent)