## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

VALERIE BAINBRIDGE        :

        Plaintiff,        :

                    :     **CIVIL ACTION NO.: 09-4683**

        v.        :

       :

ACME MARKETS, INC.        :

        Defendant.        :

       :

### MOTION FOR A PROTECTIVE ORDER

Pursuant to Fed. R. Civ. P. 26, Defendant Acme Markets, Inc., respectfully moves the Court for a protective order quashing Plaintiff Valerie Bainbridge's First Set of Requests for Admission And Request For The Production Of Documents Directed To Defendant, which were served six (6) days prior to the close of discovery and which contain 222 requests for admission and a third request for documents. Defendant incorporates herein, in support of this Motion, the facts and arguments set forth in its accompanying memorandum of law.

Respectfully submitted,

/s/ Elizabeth A. Malloy    (EM 962)
Elizabeth A. Malloy (#48297) )
Jeffrey Klamut (#206367)
Buchanan Ingersoll & Rooney PC
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
Attorneys for Defendant
Acme Markets, Inc.

Dated: July 27, 2010

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VALERIE BAINBRIDGE** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION NO.: 09-4683** |
| **v.** | : | |
| | : | |
| **ACME MARKETS, INC.** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| | : | |

## MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

Defendant Acme Markets respectfully moves the Court to issue a protective order relieving it from the undue burden of responding to Plaintiff's 222 untimely Requests for admission and third request for the production of documents.

## I.   INTRODUCTION

This is a single plaintiff employment discrimination case alleging claims under the Age Discrimination in Employment Act (ADEA) and the Fair Labor Standards Act (FLSA).  The Plaintiff, Valerie Bainbridge ("Plaintiff"), alleges she was suspended, demoted and later compelled to resign due to age-discrimination by Defendant Acme Markets, Inc. ("Acme").  The Plaintiff has already been deposed and has admitted to violations of company policy.  Despite the relatively narrow issues and minimal damages at stake in this litigation, Plaintiff's discovery has been disproportionately broad and unduly burdensome.

A.     **Factual Background**

Plaintiff spent the majority of her 37 year career with Acme working at its West Goshen store. She was always a member of the United Food and Commercial Workers Union, Local 27 ("Local 27"). In late 2004, she successfully bid for a position at Acme's newly opened West Chester store. There, Plaintiff worked as a back-up office coordinator ("OC") from 2005 to 2006 and as an office coordinator from November 2006. (Compl. ¶ 26). The OC's duties include preparing payroll documents. OCs also have access to change company time records.

In May 2007, Martha Thornley became the West Chester Store Director. On August 2, 2007, Thornley issued a verbal warning to Plaintiff for failing to prepare and submit time card modification slips. (Compl. ¶ 38; Pl.'s Dep. 48-49; Thornley, Dep. at 119). Plaintiff admits, "I probably should have been doing it," and Acme's policy requires that a management employee sign off on these sheets. (Pl.'s Dep. at 52). Still, she blames Acme's management and claims she was "never told to" submit the time card slips. (Pl.'s Dep. at 49, 52). On August 21, 2007, Plaintiff received a verbal warning from Thornley for making improper payments associated with employees' vacation and personal days. (Pl.'s Dep. at 64-65). Plaintiff, however, blames Assistant Store Director, Kim Walsh for any improper payments because, according to Plaintiff, the schedules were not right. (Pl.'s Dep. at 65-67. 69-70).

On September 6, 2007, Plaintiff met with her union representative, Thornley and front-end specialist Marianne Donaghue regarding ongoing performance issues (Pl.'s Dep. at 79-80). Specifically, Plaintiff states that at the meeting, she was accused of incorrectly paying an employee 48 hours (40 hours pay plus 8 hours vacation) for a single week. (Pl.'s Dep. 80-81, 91-93). At the conclusion of the meeting, Plaintiff, acting upon advice received from her union representative, voluntarily stepped down from her position as OC. The union sent a confirming

2

letter that Plaintiff had "decided to step down from her position as Office Coordinator." Plaintiff would remain employed as the OC, at the OC rate of pay, until a replacement was hired through the union bidding procedure and interviews. The Front End Manager, Katlin Roegner, was asked to help Plaintiff with the OC duties.

In the summer of 2007, Assistant Store Director Walsh called the front office with a question for Plaintiff only to discover that Plaintiff had left for the day and before her shift had ended. (Walsh, Dep. 220-21). Prompted by Plaintiff's disappearance, Walsh noticed that Plaintiff had modified her time records to falsely indicate that she had left at her scheduled time. A subsequent Loss Prevention ("LP") Department investigation revealed that Plaintiff had, on a number of occasions, left early without punching-out and then modified her own time records the next day to reflect that she had left at her scheduled time. (Pl.'s Dep. at 132-33). Plaintiff did not complete time card modifications slips in conjunction with her time card changes. The LP investigation also revealed that Plaintiff had taken unused Catalina coupons from the store, which is also in violation of Acme policy. (Pl.'s Dep. at 132-33).

Plaintiff admits that she left early without punching her time clock and later adjusted her time on at least three separate occasions to reflect that she worked an entire shift. (Pl.'s Dep. at 141-46). Plaintiff acknowledges Acme's video evidence of some of these and other occasions and admits that she might have made the same "mistake" on earlier occasions. (Pl.'s Dep. at 141-46). Plaintiff also admits to taking Catalina coupons. (Pl.'s Dep. at 132-33).

As a result of the loss prevention investigation and Plaintiff's admissions, Plaintiff was suspended for two (2) weeks. (Compl. ¶¶ 75-79; Pl.'s Dep. at 150, 153). Plaintiff blames her suspension not on her conduct, which could have been grounds for termination, but on age discrimination from Walsh and Thornley. (Pl.'s Dep. at 172-73).

3

Plaintiff grieved her suspension and the parties agreed to a non-precedential Last Chance Agreement by which Plaintiff was permitted to transfer to Acme's nearby Westtown store to work as a first checker.  (Compl. ¶ 81; Pl.'s Dep. at 167; Pl.'s Dep. at 160-61).  The transfer was effective on or around December 6, 2007, and from that date until her retirement on July 18, 2008, Plaintiff earned just seventy (70) cents an hour less than she had previously earned as an office coordinator.  (Pl.'s Dep. at 162, 165).  Plaintiff gave "at least a month" notice of her retirement.  (Pl.'s Dep. at 182).  In subsequent conversations with her union regarding pension payments, Plaintiff did not discuss any alleged discriminatory treatment at Westtown.  (Pl.'s Dep. at 182).  Still, Plaintiff decided to file the instant lawsuit.  On October 13, 2009, Plaintiff filed a 124 Paragraph Complaint alleging violations the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, Pennsylvania Human Relations Act (PHRA), 43 PA. STAT. § 951 *et seq.*, and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a)(1).

**B.    Discovery to Date**

In contrast to the narrow issues presented by this case, Plaintiff has engaged in broad and unbridled discovery.  To date, Plaintiff has deposed 9 witnesses, seven of which account for a total of over 1,803 pages of deposition transcripts and approximately 33 hours of testimony.  Plaintiff also served a Rule 30(b)(6) deposition notice listing 15 topics.  Through a set of 24 interrogatories and two (2) sets of document requests (totaling 50 requests), Plaintiff has amassed 5,033 documents, as well as electronic data and video, all of which Acme has produced.  Acme has also made thousands of additional pages of documents available to Plaintiff for inspection.  Still, Plaintiff has filed two motions to compel, both of which currently pend before the Court.

In the spirit of cooperation, Acme agreed to extend the initial April 23, 2010 discovery deadline to June 23, 2010.  Upon Plaintiff's request, the Court again extended the discovery

deadline to July 23, 2010. On July 13, Plaintiff requested yet another extension "to question witnesses with respect to these documents." Acme opposes this request and the Court has not yet ruled on the request. However, it is noteworthy that Plaintiff's intent was not so limited. On July 17, 2010, just four days later, Plaintiff served a twenty (20) page set of Requests for Admission containing 222 Requests and an additional request for documents. Acme received these requests on July 20, 2010 - three (3) days before the close of discovery.

Acme has no choice but to file the instant motion for a protective order. Acme respectfully requests to be relieved from the undue burden of having to respond to Plaintiff's untimely and unmeasured set of 222 requests for admission and additional request for production of documents, and to curtail Plaintiff from similarly abusing the discovery process to harass Acme and needlessly run-up its litigation costs.

## II.   ARGUMENT

### A.   Plaintiff's 222 Requests for Admission and Additional Request for Production of Documents Are Untimely.

The 222 Requests for Admission and additional request for Production of Documents ("Requests") are untimely because "plaintiff failed to serve the request in a manner that allowed defendant[] a full opportunity to respond." *Allen v. DeRose*, No.1:07-CV-1720, 2009 WL 2230598, *1 n.1 (M.D. Pa. Jul. 23, 2009). The discovery deadline for this case after two extensions was July 23, 2010. Plaintiff served her 222 requests for admission and additional requests for production of documents on July 17, 2010.

Under Federal Rule of Civil Procedure 36(a)(3), a party served with requests for admissions must have thirty (30) days to respond, absent a contrary stipulation or court order. Under Federal Rule of Civil Procedure 34(b)(2)(A), a party served with requests for production of documents must also be afforded thirty (30) days to respond. Here, there is no agreement or

order which would require Acme to answer 222 requests for admission and an additional request for production of documents within six (6) days after service and three (3) days after receipt. Thus, the due dates for both requests would be August 16, 2010, which is well after the discovery deadline.  Acme's Motion may be granted on these grounds alone.

**B.      The Burden Of Responding To Plaintiff's Voluminous, Harassing and Improper Requests Outweighs Any Benefit Plaintiff May Derive.**

In addition to being untimely, Plaintiff's 222 requests for admission and additional document request should be quashed because they are so voluminous, harassing and immaterial that the burden of response grossly outweighs any arguable benefit to Plaintiff.

**1.      The Requests are Excessive and Inappropriate For This Single-Plaintiff Employment Discrimination Case.**

Properly used, requests for admissions under FED R. CIV. P. 36 "serve the expedient purpose of eliminating 'the necessity of proving essentially undisputed and peripheral issues of fact.'"  *Gannon v. Gannon*, No. 03-6626, 2006 WL 2927639, *1 (E.D.Pa. Oct. 6, 2006) (quoting *Wigler v. Elect. Data Syst. Corp.*, 108 F.R.D. 204, 205 (D. Md. 1985)).  Requests for admissions "should not be of such great number and broad scope as to cover all the issues [even] of a complex case," and "[o]bviously ... should not be sought in an attempt to harass an opposing party." *Gannon,* 2006 WL 2927639 at *1 (quoting *Wigler*, 108 F.R.D. 206-07).  A protective order is appropriate where, among other things,  "requests to admit [are] so voluminous and so framed that the answering party finds the task of identifying what is in dispute and what is not unduly burdensome." *Advisory Committee Notes to 1970 Amendments*, 48 F.R.D. 487, 532 (1970).

The volume and range of Plaintiff's untimely Requests far surpass what is appropriate for this single plaintiff employment discrimination case. *See Taylor v. Great Lakes Waste Servs.*,

No. 06-CV-12312-DT, 2007 WL 422036, *1 n.1 (E.D. Mich. Feb. 2, 2007). In *Taylor*, a single-

plaintiff age-discrimination/FMLA case, the court explained:

> Defendant served 297 requests for admission. Although the federal
> rules do not limit the number of requests that a party may serve,
> many courts have limited by local rule the number to 25 per party.
> In addition, the Court is mindful that the federal rules limit the
> number of interrogatories that a party may serve to 25 per party.
> Fed.R.Civ.P. 33(a). ***In light of the number of requests generally
> found to be acceptable in an uncomplicated case such as this
> one, the Court finds 297 requests for admission to be oppressive
> and unduly burdensome.***

*Id.* (internal citations omitted) (emphasis added); *see also Wigler v. Elec. Data Sys. Corp.*, 108

F.R.D. 204, 206 (D. Md. 1985) ("Where a case is particularly complex, a large number of

requests for admissions may be justifiable. In contrast, the case *sub judice* is relatively

straightforward. This litigation involves a single plaintiff and two affiliated corporate defendants,

posing issues which are customary in employment discrimination actions.") (internal citations

omitted).

Due to the volume of Plaintiff's requests, it will be unduly burdensome for Acme to

determine what is disputed, what is not disputed and what is a deftly-crafted request for

admission of a "half-truth." These are "difficulties which arise when a party attempts to use

Rule 36 to cover every facet of a case." *Johnstone v. Cronlund*, 25 F.R.D. 42, 44 (E.D. Pa.

1960).

## 2.   The Requests are Harassing and Improper.

Plaintiffs 222 requests for admissions are excessively voluminous and also improper in

that they attempt to inject, rather than eliminate, peripheral issues of fact. For example, in

Requests  No. 13-15, Plaintiff seeks admissions regarding $50.00 that Plaintiff's managers

allegedly found in the self-checkout aisle and donated to a charity instead of "tak[ing] steps" to

track down and return to a customer. These requests have nothing to do with Plaintiff's Complaint for discrimination because of age.

Requests numbered 53-222 represent a similar attempt. These requests appear to seek admissions regarding 25 employees, a third of who are in Plaintiff's protected class, by reference to electronically produced time punch records which Plaintiff electronically sorted and failed to include with her Requests. Plaintiff's counsel apparently recorded each event for which there is a missing time-punch entry for each employee and now, without any factual circumstances, seeks to have Acme admit that each missing entry represents a time when an employee "failed to punch out." Acme cannot admit or deny such requests as the missing entries could be due to a number of causes over the past three years other than an employee's failure to punch out. Moreover, the missing entries do not show whether these employees, like Plaintiff, left work early and subsequently falsified their own time records to indicate they had covered their entire shift.[1] Thus, even if Acme were to expend the excessive time and resources it would take to answer such requests, the answers would not be pertinent to this case.

The Requests are also improper because, by and large, they do not appear to seek confirmation of the genuineness of any document or "admissions of facts already known." *See Wigler*, 108 F.R.D. at 206. Instead, many of the requests, including those referring to Katlin Roegner, improperly seek admissions to factual allegations for which no foundation has been established through formal discovery. "A party cannot put the burden of discovery on the other party by obtaining all factual details by means of requests for admission." *Mitchell v. Yueter*, No. 89-1465-FGT, 1993 WL 139218 (D. Kan. Jan. 12, 1993).

---

[1] In fact, there is no evidence management knew of the allegedly missing punches, and it was the Office Coordinator's duty to monitor the time punches. (Thornley Dep. at 153-54) Plaintiff admits she did not bring any violations to management's attention. (Pl.'s Dep. at 153, 239, 257)

3.   **The Volume and Harassing Nature Of Plaintiff's Request Warrant <u>Relief In the Form of a Protective Order.</u>**

Due to the burdensome and harassing nature of Plaintiff's requests and their lack of relevance or proportionality to this case, a protective order is warranted. "[T]he court must limit the frequency or extent of discovery otherwise allowed by [the Federal Rules of Civil Procedure] or by local rule if it determines, among other things, that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. FED. R. CIV. PROC. 26(b)(2)(C)(iii).

The volume of Plaintiff's requests will make it burdensome for Acme to determine what is disputed, what is not disputed and what is a request for admission of a "half-truth." The unfounded nature of Plaintiff's requests will require Acme to conduct additional discovery and write numerous objections and/or lengthy explanations, which is contrary to the spirit of Rule 36. *Johnstone*, 25 F.R.D. at 44-45. The ultimate effect of the requests will be to harass Acme and expend valuable resources addressing factual minutia that has no bearing on Plaintiff's claim of discrimination because of age.

Plaintiff's 222 requests for admissions violate "the purpose of the Rule [36, which] is to separate the wheat from the chaff and to get down to the real issues in the case." *Id.* at 44. The burdensome tasks of winnowing Plaintiff's requests should not be placed on Acme or the Court. Accordingly, the requests should be quashed.

## III.   <u>CONCLUSION</u>

For any and all of the foregoing reasons, Acme respectfully requests a protective order quashing Plaintiff's untimely requests for admission and additional request for production of documents.

Respectfully submitted,

 /s/  *Elizabeth A. Malloy        (EM 962)*
Elizabeth A. Malloy (#48297) )
Jeffrey Klamut (#206367)
Buchanan Ingersoll & Rooney PC
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA  19102-2555
Attorneys for Defendant
Acme Markets, Inc.

Dated:  July 27, 2010

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of July, 2010, I caused to be served a true and correct copy of Defendant Acme Market, Inc.'s Motion For Protective Order, accompanying memorandum of law and proposed Order to be filed via the Official Court Electronic Document Filing System and thus is available for viewing, and served upon the following counsel of record by virtue of this filing.

Marian K. Schneider
Law Office of Marian K. Schneider
295 E. Swedesford Road, #348
Wayne, PA 19087

*s/ Elizabeth Malloy*          *(EM962)*
Elizabeth A. Malloy